UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:19-CV-80010-ROSENBERG/REINHART

AMICA MUTUAL INSURANCE COMPANY,

    Plaintiff,

v.

RSUI INDEMNITY COMPANY,
UNITED SPECIALTY INSURANCE COMPANY,
TIERRA DEL MAR CONDOMINIUM ASSOCIATION, INC.
BRIAN UPTON

    Defendants.
_____/

## AMICA MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT UNITED SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS

COMES NOW the Defendant AMICA MUTUAL INSURANCE COMPANY ('AMICA MUTUAL") by and through its undersigned attorneys, and serves its Memorandum of Law in opposition to the Defendant UNITED SPECIALTY INSURANCE COMPANY'S ("USIC") Motion to Dismiss [ECF 6] and states that the Motion to Dismiss should be denied. In support thereof the Defendant states as follows:

    **I.    INTRODUCTION**

AMICA MUTUAL, the Plaintiff in this declaratory judgment action, issued a Personal Umbrella Liability Policy 7709092717 to BRIAN UPTON which provides a defense and indemnification subject to the terms of the insurance policy. [ECF 1-3]The Defendant USIC issued a Commercial General Liability insurance policy DCH00139-00 to TIERRA DEL MAR

CONDOMINIUM ASSOCIATION, INC. ("TIERRA DEL MAR") [ECF 1-4] which provides a defense and indemnification to the Association and its board members subject to the terms of the insurance policy. Frank Speciale sued both BRIAN UPTON and TIERRA DEL MAR for Defamation and Breach of Fiduciary Duty in the underlying case of <u>Frank Speciale v Brian Upton and Tierra Del Mar Condominium Association, Inc.</u> Palm Beach County Circuit Court Case 502017CA005450XXXXMB. ("The Palm Beach Lawsuit") Under the terms of its policy AMICA MUTUAL is providing a defense to BRIAN UPTON in The Palm Beach Lawsuit. USIC has been requested to defend and indemnify BRIAN UPTON and TIERRA DEL MAR in The Palm Beach Lawsuit but USIC has refused to do so and has denied coverage. [ECF 1-4 page 91] AMICA MUTUAL has brought this declaratory judgment action to obtain a ruling from the Court that USIC has a duty to defend and indemnify BRIAN UPTON along with AMICA MUTUAL. USIC has moved to dismiss claiming that it has no duty to defend or indemnify either BRIAN UPTON or TIERRA DEL MAR as a matter of law. [ECF 6] BRIAN UPTON has not yet been served or filed a response to the Amended Petition. TIERRA DEL MAR has served an Answer to the Amended Petition and stated that the Amended Petition speaks for itself. [ECF 1-4 page 122]

**II. THE ALLEGATIONS OF THE PALM BEACH LAWSUIT OF <u>FRANK SPECIALE v BRIAN UPTON AND TIERRA DEL MAR CONDOMINIUM ASSOCIATION, INC.</u> PALM BEACH COUNTY CIRCUIT COURT CASE 502017CA005450XXXXMB**

The need for this declaratory judgment action is to resolve a bona fide dispute as to the duty to defend and indemnify BRIAN UPTON and TIERRA DEL MAR from the allegations in The Palm Beach Lawsuit. An insurer's duty to defend under Florida law is determined solely by the allegations of the complaint in which the insured has been sued and if those allegations identify facts within the scope of the policy's coverage, the insurer must defend. <u>Lime Tree Vill.</u>

2

Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co. , 980 F.2d 1402, 1405 (11th Cir. 1993); Trizec Props., Inc. v. Bitmore Constr. Co., Inc. , 767 F.2d 810, 811 (11th Cir. 1985). This is so even if it is uncertain whether coverage of the claim exists under the policy. Mid – Continent Cas. Co. v American Pride Building Co. 601 F.3d 1143 (11th Cir. 2010). The duty to defend "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435 at 442-443 (Fla. 2004)

The allegations in The Palm Beach Lawsuit against BRIAN UPTON are attached and incorporated into the Amended Petition for Declaratory [EFC 1-4] and consist of detailed factual allegations in two counts. The first count against BRIAN UPTON is for damages due to alleged "Breach of Fiduciary Duties" while acting as President and Director of TIERRA DEL MAR. The second count against BRIAN UPTON is for damages due to alleged "Defamation Per Se". It is alleged that some of BRIAN UPTON's actions were "maliciously motivated" and made in "bad faith" However, not all of the allegations were alleged to be maliciously motivated as they were only "motivated in large part" [ECF 1-4 page 68] and therefore not totally maliciously motivated. For example, in the first count for "Breach of Fiduciary Duties" it is alleged that BRIAN UPTON breached his fiduciary duty by "failing to abide by, uniformly and fairly enforce and/or ignoring the provisions of the Condominium Association's Governing Documents." [ECF 1-4 page 72]. Such acts included failing to account for laundry machine money [ECF 1-4 page 72]; storing and using a barbecue grill on his balcony unit [ECF 1-4 page 72]; refusing to provide access to the official records of the Association [ECF 1-4 page 73]; and resending laundry room hours of operation [ECF 1-4 page 74] As a direct and proximate result of those actions is alleged that "the plaintiff has suffered damages." [ECF 1-4 page 75] In the second count for "Defamation Per Se" it is alleged that BRIAN UPTON published written and oral false

3

statements "in his individual capacity and under the auspices of his office as a director and president of the Association." [ECF 1-4 page 76] and that those "statements damaged the Plaintiff's good reputation." [ECF 1-4 page 76] The allegations are that BRIAN UPTON "maliciously, willfully, knowingly and intentionally published written and oral false statements…" [ECF 1-4 page 75] Those statements included bribery, pay-o-la, lack of construction knowledge, prostitution, pot smoking, faking disability, failure to pay assessments and pilfering of funds. [ECF 1-4 page 76] Of importance it is alleged that the defamatory statements were intentionally made but there is no allegation that the defamatory statements were made with a specific intent to harm. As set forth below all defamatory statements must be intentionally made but only certain defamatory statements require allegations of intent to harm.

### III. IT IS UNDISPUTED THAT BRIAN UPTON AND TIERRA DEL MAR CONDOMINIUM ASSOCIATION, INC. ARE INSUREDS UNDER THE USIC POLICY

The named insured under the USIC Commercial General Liability policy is TIERRA DEL MAR CONDOMINIUM ASSOCIATION, INC.  In addition to providing insurance coverage to the named insured the USIC policy also provides insurance coverage to BRIAN UPTON as an additional insured.  In SECTION II-WHO IS AN INSURED coverage is provided to: "Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors." In the underlying Palm Beach Lawsuit it is specifically alleged that "Upton is a member of the Association board of directors, and is the current president." [ECF 1-4 page 67] Count I of the underlying action asserts a cause of action against BRIAN UPTON for alleged "Breach of Fiduciary Duties" while acting as a director. [ECF 1-4 page 71] In the Amended Complaint for Declaratory Relief it is alleged that "The defendant/respondent Brian Upton is sui juris and a resident Palm Beach County, Florida and was at all times relevant hereto,

4

the president and a member of the Board of Directors of Tierra Del Mar Condominium Association, Inc. Brian Upton has an actual, proper and present, adverse and antagonistic interest in the subject matter, either in fact or in law." [ECF 1-3 page 14]  Therefore, BRIAN UPTON is clearly and insured under the USIC Commercial General Liability policy.

## IV. THERE IS INSURANCE COVERAGE FOR BRIAN UPTON AND TIERRA DEL MAR CONDOMINIUM ASSOCIATION, INC. UNDER COVERAGE A AND COVERAGE B OF THE USIC POLICY

Even though BRIAN UPTON is clearly an insured under its Commercial General Liability Policy, USIC argues that it has no duty to either defend or indemnify BRIAN UPTON and TIERRA DEL MAR from the allegations in The Palm Beach Lawsuit for a variety of reasons. None of those reasons support a denial of coverage or a dismissal as set forth below.

### A. THERE WAS AN OCCURANCE UNDER THE USIC POLICY

The first basis raised for dismissal by USIC is that there was no "occurrence" alleged in The Palm Beach Lawsuit.  The USIC Commercial General Liability Insurance Policy provides insurance coverage to its insureds such as BRIAN UPTON and TIERRA DEL MAR. Under COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY that USIC coverage applies to bodily injury and property damage caused by an "occurrence" that takes place in the coverage territory. In the Palm Beach Lawsuit count for "Breach of Fiduciary Duties" it is alleged that "As a direct and proximate result of Upton's commission of the above described acts, the plaintiff has suffered damages." [ECF 1-4 page 75] The policy defines "occurrence" as ""Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The USIC policy does not define "accident".

The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts. Container Corp. of America v.

5

Maryland Cas. Co., 707 So.2d 733, 736 (Fla.1998) However, where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer. Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997). In addition, when an insurer fails to define a term in a policy the insurer cannot take the position that there should be a 'narrow, restrictive interpretation of the coverage provided. State Comprehensive Health Ass'n v. Carmichael, 706 So.2d 319, 320 (Fla. 4th DCA 1997)

In State Farm Fire & Cas. Co. v. CTC Development Corp., 720 So.2d 1072 (Fla., 1998) the Florida Supreme Court reversed a summary judgment and concluded that the term "accident" within a liability policy is susceptible to varying interpretations and should be construed in favor of the insured. The Court stated that "the question of whether the injury or damages were unintended or unexpected will be a question of fact" and went on to hold:

> We hold that where the term "accident" in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only "accidental events," but also injuries or damage neither expected nor intended from the standpoint of the insured. This definition comports with the language used in standard comprehensive general liability policies and with the definition of the term "accidental" set forth in Dimmitt as "unexpected or unintended." 636 So.2d at 704.

A cause of action for breach of fiduciary duty as alleged in Count I is an "occurrence" and an "accident". In Hartford Acc. and Indem. Co. v. Beaver, 466 F.3d 1289 (11th Cir. 2006) the complaint alleged that the defendant breached its fiduciary duties to nursing home residents. The Hartford denied coverage and claimed that the bodily injury alleged in the Underlying Complaint was no accident because the claim was grounded on the Appellant's alleged intentional scheme to defraud creditors and nursing home residents and to maximize profits. In reversing a summary judgment for Hartford the court relied on State Farm Fire & Cas. Co.v CTC Development Corp supra which held that "[i]n many cases the question of whether the injury or damages were unintended or unexpected will be a question of fact; in some cases, the question

6

will be decided as a matter of law, such as in cases where the insured's actions were so inherently dangerous or harmful that injury was sure to follow." State Farm, 720 So.2d at 1076. The duty to defend arises even where "there has been a suggestion made that the purported negligent allegations are really allegations of intentional acts in disguise.... [W]here a complaint alleges facts that are partially within and partially outside the coverage of an insured's policy, the insurer is not only obligated to defend, but must defend that entire suit." Sunshine Birds & Supplies, Inc. v. United States Fid. & Guar. Co., 696 So.2d 907, 910 (Fla. 3d DCA 1997) Thus, so long as the complaint can reasonably be read as alleging that the class members' injuries were negligently caused, even if it also may arguably be read as alleging that the injuries were intentionally caused, the doubt must be resolved in favor of finding a duty to defend. See id.

### B. THERE WAS BODILY INJURY AND PROPERTY DAMAGE UNDER THE USIC POLICY

The second basis for dismissal raised by USIC is that there is no bodily injury or property damage alleged in the Palm Beach Lawsuit. The USIC Commercial General Liability Insurance Policy provides coverage to its insureds such as BRIAN UPTON and TIERRA DEL MAR Under COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY that coverage applies to "bodily injury" and "property damage". In the Palm Beach lawsuit count for "Defamation Per Se" is alleged that "Upton's aforesaid statements damaged the plaintiff's good reputation." [ECF 1-4 page 76] The policy defines "Bodily Injury as "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The policy defines "Property Damage" as "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." The policy defines "Loss of use of

7

tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

Both counts against BRIAN UPTON in The Palm Beach Lawsuit are seeking "compensatory damages" These allegations sufficiently allege "bodily injury" damages.

### C. THERE IS PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE FOR DEFAMATION UNDER COVERAGE B OF THE USIC POLICY

Claims for slander and libel are specifically covered under COVERAGE B-PERSONAL AND ADVERTISING INJURY LIABILITY of the USIC policy. Under the Insuring Agreement the USIC policy provides:

> We will pay those sums up the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> Personal and advertising injury is defined as follows:
>
> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
>      a.  False arrest, detention or imprisonment;
>
>      b.  Malicious prosecution;
>
>     ******
>
>      d.  Oral or written publication, in any manner, of material that **slanders or libels** a person or organization, or disparages or person's or organizations goods, products or services; **(e.s.)**
>
>      e.  oral or written publication, in any manner, of material that violates a person's right of privacy;

The policy does not define "Libel", "Slander" of "Defamation". Count two of The Palm Beach Lawsuit asserting a cause of action for defamation per se alleging that BRIAN UPTON published written and oral false statements, which damaged the plaintiff would reputation. On its

8

face these allegations support a claim for libel and slander. As set forth above libel and slander are covered personal and advertising injury claims.

### D. THE KNOWING VIOLATION OF RIGHTS OF ANOTHER EXCLUSION AND THE KNOWLEDGE OF FALSITY EXCLUSION DO NOT APPLY

The slander and libel coverage provided under Coverage B contains an exclusion that personal and advertising injury liability coverage does not apply to certain acts. Of importance those excluded acts do not include acts with "malicious intent". The exclusion states as follows:

> **2 Exclusions**
>
> This insurance does not apply to:
>
> **a. Knowing Violation Of Rights Of Another**
>
> "Personal and advertising injury" caused by or at the direction of the insured **with the knowledge** that the acts would violate the rights of another and would inflict "personal and advertising injury". **(e.s.)**
>
> **b. Material Published With Knowledge Of Falsity**
>
> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured **with knowledge of its falsity. (e.s.)**

Defamation is defined as the unprivileged publication of false statements which naturally and proximately result in injury to another. Wolfson v. Kirk, 273 So. 2d 774 (Fla. 4th DCA 1973). Razner v. Wellington Regional Med. Ctr., Inc., 837 So. 2d 437 (Fla. 4th DCA 2002) This is a claim of "Defamation Per Se". In a lawsuit for defamation per se the law presumes that the statements were made with malicious intent as an element of the claim and it is irrelevant if the statements were made with knowledge of falsity. In Miami Herald Publishing Company v. Ane, 458 So.2d 239, 241 (Fla.1984), the court pointed out that "Florida's concern for individual reputation is reflected in article I, section 4, of the Florida Constitution." Florida has thus singled

out defamation per se for special rules in civil tort litigation. In Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217 (1887), the court held that statements defamatory per se are presumed harmful as a matter of law. In Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 592 (1906), the court held that with defamation per se "the law presumes malice in their utterance" making it unnecessary to prove express malice. In Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 239 (1933), the court pointed out that the law's condemnation of defamation per se "has been affirmed from earliest times," explaining that "the injurious character" of defamation per se "is a fact of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect." 146 So. at 236.

The USIC exclusion is ambiguous as the policy would provide coverage for slander and then take it away even if there was no intent. See Employers Commercial Union Insurance Company v. Kottmeier, 323 So.2d 605 (Fla. 2d DCA 1975) The USIC policy does not exclude coverage for malicious defamation or defamation per se and the exclusion is unenforceable. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous. Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) Exceptions to coverage in an insurance policy are strictly construed against the insurer and any doubt or ambiguity is resolved in favor of the insured. Hartford Accident & Indem. Co. v. Phelps, 294 So. 2d 362, 364 (Fla. 1st Dist. Ct. App. 1974)

In Employers Commercial Union Insurance Company v. Kottmeier, 323 So.2d 605 (Fla. 2d DCA 1975), a physician was sued by an anesthesiologist for slander. The physician's insurance policy specifically provided coverage for libel and slander except if published maliciously. The insurance company denied coverage, claiming that malice, either actual or

10

implied is the gist of every actionable claim for libel. The relevant insurance policy definition stated:

> Personal Injury means: The publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy, except that maliciously published or uttered by, at the direction of, or with the consent of the insured…

The trial court found that the policy provided coverage for the alleged slander. The Second District Court of Appeal affirmed and held that a slanderous statement was covered by the policy unless the statement was made with a specific intent to harm which is equivalent to actual malice. In reaching this conclusion, the court followed the rule that even though an act which causes injury was intentionally done, liability coverage will not be excluded under an intentional injury exclusion clause unless the insured acted with specific intent to cause injury. Phoenix Insurance Company v. Helton, 298 So.2d 177 (Fla. 1st DCA 1974); Cloud v. Shelby Mutual Insurance Company, 248 So.2d 217 (Fla. 3d DCA 1971). The court drew a distinction between a statement which may be intentionally uttered which is ultimately determined to be slanderous and another kind of statement which is made with the specific intent to harm the slandered party. An intentional slanderous statement would be covered but if statement made with the specific intent to harm, which is the equivalent of malice would not be covered.

### E. THE EXPECTED OR INTENDED INJURY EXCLUSION DOES NOT APPLY

The USIC Commercial General Liability Insurance Policy provides coverage to its insureds such as BRIAN UPTON and TIERRA DEL MAR. Under COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY that coverage applies to "bodily injury" and "property damage" subject to the expected or intended exclusion. That exclusion provides that the USIC coverage a liability policy does not apply to: "Bodily injury" or "property damage"

11

expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

In determining that an expected or intended injury exclusion was inapplicable the Court in Prudential Property & Casualty Insurance Co. v. Swindal, 622 So.2d 467 (Fla.1993) held that "Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts. Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. Gulf Life Ins. Co. v. Nash, 97 So.2d 4, 9–10 (Fla.1957); see also, e.g., Stuyvesant Ins. Co. v. Butler, 314 So.2d 567, 570 (Fla.1975); Poole v. Travelers Ins. Co., 130 Fla. 806, 814, 179 So. 138, 141 (1937). Thus, intentional act exclusions are limited to the express terms of the policies and do not exclude coverage for injuries more broadly deemed under tort law principles to be consequences flowing from the insured's intentional acts." The Swindal court reaffirmed its earlier holding in Nash and explained that "injury or damage is caused intentionally within the meaning of an intentional injury exclusion clause if the insured has acted with the specific intent to cause harm to a third party." Swindal, 622 So.2d at 471 Here, when read in pari materia with the "occurrence" provision, the policy language supports a conclusion that coverage is provided where the insured did not expect or intend to cause harm. See CTC, 720 So.2d at 1075. The damages at issue were consequences flowing from UPTON's allegedly intentional acts. Because the acts were alleged to be intentional but the damages are not alleged to be an intentional injury, the expected or intended injury exclusion does not apply.

## V. USIC HAS A DUTY TO DEFEND

In Florida, and insurer's duty to defend an action against its insured by a third person is determined by the allegations of the complaint. Stevens v Horne, 325 So. 2d 459 (Fourth DCA 1975) As long as one count of the complaint against the insured is within the scope of liability coverage, the insurer has a duty to defend at least until such time as the covered portion of the claim is eliminated from the lawsuit. Employers Commercial Union Insurance Co. v Kottmeier, 323 So. 2d 605 (Second DCA 1975) An insurance companies duty to defend an insured is determined solely from the allegations of the complaint against the insured, not by the actual facts of the cause of action against the insured, the insured's version of the facts or the insureds defenses. Smith v General Accident Insurance Co. 641 So. 2d 123 (Fourth DCA 1994) If the allegations in the complaint state facts that bring the injury within the policies coverage, the insurer must defend regardless of the merits of the lawsuit. Amerisure Insurance Company v Gold Coast Marine Distributors, Inc. 771 So. 2d 579 (Fourth DCA 2000) Any doubt about the duty to defend must be resolved in favor of the insured. Marr Investments Inc. Greco, 621 So. 2d 447 (Fourth DCA 1993)

## VI. CONCLUSION

BRIAN UPTON and TIERRA DEL MAR are insured under the USIC policy.There was an occurrence and personal injury alleged in The Palm Beach Action. There is personal and advertising injury coverage for libel and slander. The knowledge exclusion and the expected and intended exclusions are inapplicable and ambiguous. There is a duty to defend. For the foregoing reasons, the plaintiff AMICA MUTUAL respectfully requests that this court deny the defendant USIC Motion to Dismiss and for such further relief as deemed appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 23, 2019 I electronically filed foregoing with the Clerk of the Court by using the CM/ECF system with copies provided via e-mail to the parties listed on the attached service list and/or via U.S. Mail

By: /s/ James J. McNally
JAMES J. MCNALLY

## SERVICE LIST

James Kaplan, Esq.
Kimberly S. Heifferman, Esq.
Kaplan & Zeena LLP
2 South Biscayne Boulevard
Suite 3050
Miami, Florida 33131
Kimberly.Heifferman@kaplanzeena.com
James.Kaplan@kaplanzeena.com

Michael Kiernan, Esq.
Ashley Kellgren, Esq.
Traub Lieberman Straus & Shrewsberry LLP
360 Central Avenue
10th Floor
St. Petersberg, Florida 33701
mkiernan@tlsslaw.com
akellgren@tlsslaw.com

Angela Prudenti, Esq.
Sachs Sax Caplan
6111 Broken Sound Parkway NW
Suite 200
Boca Raton, Florida 33487
aprudenti@ssclawfirm.com
mguerra@ssclawfirm.com