UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 9:19-CV-80010-Rosenberg/Reinhart

AMICA MUTUAL INSURANCE COMPANY,

        Plaintiff,

v.

RSUI INDEMNITY COMPANY, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT UNITED SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS (DE 6)

Currently before the Court is a Motion to Dismiss filed by Defendant United Specialty Insurance Company ("United"). DE 6. This motion was referred to the undersigned for appropriate disposition by the presiding District Judge. DE 16. In its Petition for Declaratory Judgment, Plaintiff Amica Mutual Insurance Company ("Amica"), contends that United has a duty to defend and indemnify Brian Upton in the case of *Frank Speciale v. Brian Upton and Tierra Del Mar Condominium Association, Inc.*, Palm Beach County Circuit Court Case 502017CA005450XXXXMB ("the *Speciale* Action"). DE 1-2 at 13-22. United counters that the "clear and unambiguous language" of its policy, read in conjunction with the "factual allegations in the underlying complaint, demonstrate that there is no coverage" owed by United, and therefore, Amica's claims against United should be dismissed under Rule 12(b)(6) with prejudice. DE 6 at 1-2. The undersigned has reviewed the Petition, the complaint in the underlying *Speciale* Action (DE 1-2 at 156-176), Amica's response (DE 11), and United's reply (DE 17). For the reasons stated herein, this Court **RECOMMENDS** that United's Motion to

Dismiss Counts Two and Three of Amica's Petition for Declaratory Judgment be **GRANTED** without prejudice.

### FACTS REGARDING THE INSURANCE POLICIES AND THE INSURANCE COMPANIES' COVERAGE DECISIONS[1]

1. Amica issued a Florida Personal Umbrella Liability Policy to Brian and Lauren Upton with a policy period of September 1, 2016 through September 1, 2017. DE 1-2 at ¶ 5, Exhibit 1.

2. United issued a Commercial General Liability (CGL) insurance policy to Tierra Del Mar Condominium Association for the policy period from April 19, 2016 to April 19, 2017 ("the United Policy"). *Id.* at ¶ 7, Exhibit 3.

3. Brian Upton is the president and a member of Tierra Del Mar's board of directors and is an insured under the United policy. *Id.* at ¶ 8-9.[2]

4. Coverage A of the United Policy provides, in relevant part, as follows:

SECTION I – COVERAGES
COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY[3]

   1. Insuring Agreement

      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance

---

[1] For purposes of this Motion, the Court accepts all well-pled factual allegations in, and all attachments to, the Petition for Declaratory Judgment as true and evaluates all plausible inferences derived from those facts in favor of the Plaintiff. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

[2] For purposes of this motion, United accepts that Upton is an executive officer or director of Tierra Del Mar and thus, is covered as an insured under its policy. DE 6 at 4.

[3] The United policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." DE 1-2 at 117. "'Property damage' means: (a) Physical Injury to tangible property, including all resulting loss of use of that property . . . or (b) Loss of use of tangible property that is not physically injured . . . For the purposes of this insurance, electronic data is not tangible property." *Id.* at 119.

applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

    b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory . . ." (DE 1-2 at 105).[4]

5. As to Coverage A, the United Policy contains the following pertinent exclusion:

   This insurance does not apply to:

   a. Expected Or Intended Injury

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. (DE 1-2 at 106).

6. Coverage B of the United Policy, provides, in relevant part:

   COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

   1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . . (DE 1-2 at 110).

7. "'Personal and advertising injury' means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner, of material that violates a person's

---

[4] The United policy defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." DE 1-2 at 119.

right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement." (DE 1-2 at 119).

8. Coverage B of the United Policy contains the following pertinent exclusions:

   This insurance does not apply to:

   a. Knowing Violation Of Rights Of Another

   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. Material Published With Knowledge Of Falsity

   "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity. (DE 1-2 at 110).

9. Frank Speciale, who owns two Tierra Del Mar condominium units, filed a lawsuit against Upton and Tierra Del Mar, the details of which are set forth below. DE 1-2 at ¶ 10.

10. Amica is defending Upton in the *Speciale* Action under a reservation of rights pursuant to the terms of its umbrella policy. *Id.* at ¶ 13.

11. United denied Upton's request that it defend and indemnify him in the lawsuit pursuant to its GCL policy. *Id.* at ¶ 14; Exhibit 6 (DE 1-3 at 6-10).

12. In its letter denying coverage, United stated that "none of the allegations [in *Speciale*'s Complaint] are predicated upon an alleged 'accident' which would constitute a covered 'occurrence' under the Policy" and that the conduct attributed to Upton "consist[s] of intentional acts which would be excluded from coverage." DE 1-3 at 9. United concluded that "[g]iven [Speciale's] allegations of malicious intent .

. . any liability arising from Mr. Upton's alleged conduct is excluded from coverage." *Id.*

## ALLEGATIONS IN THE UNDERLYING COMPLAINT

The *Speciale* Complaint alleges two causes of action against Upton: breach of his fiduciary duty to the unit owners (Count One), and defamation per se (Count Two). DE 1-2 at ¶ 10-12. The facts alleged in the *Speciale* Action that are relevant to the instant coverage action are as follows:

1. Upton is a member of the Tierra Del Mar Association's board of directors and is its current President. DE 1-2 at 158, ¶ 8.

2. Speciale, who owns two Tierra Del Mar condominium units, "has been and remains" the "target" of Upton's "animosity." The "common denominator" for all of Speciale's claims against Upton is "Upton's maliciously motivated bad faith acts and omissions." *Id.* at ¶¶ 6, 12.

3. Upton "harbors deep seated malice and ill-will against Speciale" which resulted in him publishing false and defamatory statements about Speciale. *Id.* at ¶¶ 14.

4. Specifically, Upton "maliciously, willfully, knowingly and intentionally published written and oral false statements" that Speciale "was fired from his position as inspector for the City of Boca Raton because he was taking bribes," accusing Speciale of "not know[ing] anything about construction;" accusing Speciale of permitting prostitutes to visit his unit and allowing tenants to smoke pot; accusing Speciale of "faking" a disability; accusing Speciale of not paying his assessments, and engaging in illegal and fraudulent conduct. *Id.* at ¶ 26.

5. Speciale claims that Upton's malicious and intentionally false statements have "damaged" his "good reputation," and that Upton had a "bad faith motive to harm [him]." *Id.* at ¶¶ 18, 26, 28.

6. "Upton was and remains relentless in his endeavors to harm [Speciale's] reputation by publishing the false statements and continues to cause [Speciale] damage by republishing and repeating the false statements." *Id.* at ¶ 29.

## **LEGAL ARGUMENTS**

United argues that Amica is not entitled to coverage under either Coverage A or Coverage B. As to Coverage A, Amica argues (1) the *Speciale* Complaint does not allege an "occurrence" that would trigger Coverage A of its policy, (2) the *Speciale* Complaint does not allege "bodily injury" or "property damage" as those terms are defined by the United Policy, and (3) even if there was an "occurrence" or "bodily injury" or "property damage" as those terms are defined by the United Policy, the policy's "Expected Or Intended Injury" Exclusion would bar any possible coverage. DE 6 at 2, 12-15.

As to Coverage B, United argues that the "Knowing Violation of Rights of Another" and "Material Published With Knowledge of Falsity" exclusions apply. The "Knowing Violation of Rights of Another" exclusion precludes coverage for "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" DE 6 at 3. According to United, "all of the facts alleged against Upton in the underlying litigation involve malicious intent." *Id*. Moreover, the "Material Published With Knowledge Of Falsity" exclusion bars coverage for "'personal and advertising injury' arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity." *Id.* United

argues that the underlying Complaint specifically alleges that Upton intended to harm Speciale through the publication and repeating of false statements. *Id.* at 3, 15-17.

In its opposition papers, Amica acknowledges that "an insurer's duty to defend under Florida law is determined solely by the allegations of the complaint." DE 11 at 2-3. Amica also acknowledges that the underlying Complaint alleges "that some of [Upton's] actions were 'maliciously motivated' and made in 'bad faith.'" *Id.* at 3. However, according to Amica, the fact that the Complaint states that Upton's "transgressions were motivated in large part" by his "self-evident [ ] animosity" towards Speciale, means that "not all of the allegations were alleged to be maliciously motivated." *Id.* (quoting DE 1-2 at ¶ 12). According to Amica, "it is alleged [in the underlying Complaint] that the defamatory statements were intentionally made but there is no allegation that the defamatory statements were made with a specific intent to harm." DE 11 at 4.

Amica contends that the breach of fiduciary duty claim in Count One of the *Speciale* Action is covered by the United policy because the Complaint states: "As a direct and proximate result of Upton's commission of the above described acts, [Speciale] has suffered damages." *Id.* at 5 (quoting DE 1-2 at ¶ 22). Amica argues that the United policy's failure to define the term "accident" in Coverage A renders the breach of fiduciary duty claim covered. DE 11 at 6.

With regard to Speciale's defamation *per se* claim, Amica contends that it is covered under the "personal and advertising injury" set forth in Coverage B and that that the exclusions are ambiguous, and thus, unenforceable. DE 11 at 8-11. Specifically, Amica argues that the "Knowing Violation of Rights of Another" exclusion is ambiguous because the United policy provides "coverage for slander and then take[s] it away even if there was no intent." *Id.* at 10.

Amica further contends that the United policy "does not exclude coverage from malicious defamation or defamation per se." *Id.*

## APPLICABLE STANDARDS

1. **Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted. According to the federal rules, a claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pled factual allegations in the complaint, as well as all attachments thereto, and evaluates all plausible inferences derived from those facts in favor of the Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a plaintiff need not state in detail the facts upon which he bases his claim, Rule 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n. 3. In other words, a plaintiff's pleading obligation requires "more than labels and conclusions." *Id.* at 555; *see also Pafumi v. Davidson*, No. 05–61679–CIV, 2007 WL 1729969, at *2 (S.D. Fla. June 14, 2007) (J. Cohn).

2. **Interpreting Insurance Policies in Coverage Disputes and the Duty to Defend**

An insurer's duty to defend claims against an insured is determined by the terms of the policy and allegations of the underlying complaint. *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977). "The duty to defend does not hinge on the true facts that gave rise to the cause of action against the insured, the insured's version of the facts, or the

insured's defenses to the underlying complaint." *Liberty Mut. Fire Ins. Co. v. Mark Yacht Club on Brickell Bay, Inc.*, No. 09-20022-CIV, 2009 WL 2633064, at *3 (S.D. Fla. Aug. 25, 2009) (J. Moore). "The insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage." *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993). If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured. *Id.* (citing *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810, 813-14 (Fla. Dist. Ct. App. 1985)). However, "insureds generally may not trigger the duty to defend by invoking theories of liability that were not alleged in the complaint." *Selective Ins. Co. of Se. v. William P. White Racing Stables, Inc.*, 718 F. App'x 864, 868 (11th Cir. 2017).

The interpretation of insurance policies, like all contracts, is generally a question of law. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). When interpreting an insurance policy, Florida courts "start with the plain language of the policy, as bargained for by the parties." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).[5] The "Florida Supreme Court has made clear that the language of the policy is the most important factor. Under Florida law, insurance contracts are construed according to their plain meaning." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274-75 (11th Cir. 2008) (quoting *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So. 2d 528, 537 (Fla. 2005)). *See also Ohio Cas. Ins. Co. v. Cont'l Cas. Co.*, 279 F. Supp. 2d 1281, 1283 (S.D. Fla.

---

[5] United removed this coverage dispute to federal court based on diversity jurisdiction (DE 7), therefore, Florida substantive law governs this dispute. *See Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

2003) (interpreting policy language according to its "'everyday meaning' as it is 'understandable to the layperson.'") (quoting *Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So. 2d 739, 741 (Fla. Dist. Ct. App. 2003)).

"This maxim applies to exclusions as well; if an exclusionary provision is unambiguous, the Court must apply the exclusion as it is written." *Cammarota v. Penn-Am. Ins. Co.*, No. 17-CV-21605, 2017 WL 5956881, at *3 (S.D. Fla. Nov. 13, 2017) (J. Williams) (citing *Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998)). The precise language and plain meaning of exclusionary provisions are particularly important because in Florida, insurance exclusion clauses are construed strictly against the insurer. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000)).

"When considering insurance coverage disputes, Courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." *Cammarota,* 2017 WL 5956881, at *2. *See also Florida Farm Bureau Gen. Ins. Co. v. Ins. Co. of North Am.*, 763 So.2d 429, 432 (Fla. Dist. Ct. 2000) ("the applicability of policy exclusions contained in a policy attached as an exhibit may be raised by a motion to dismiss when the allegations of the complaint clearly show that the exclusions do apply.").

"[O]nly when the relevant policy language is 'susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage' will the language be considered ambiguous and, thus, construed in favor of coverage." *Id.* at *3 (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). To be deemed ambiguous, there must be a "genuine inconsistency [or] uncertainty" in the meaning of the policy language; this principle does "not allow courts to rewrite contracts [or] add meaning that is not present . . ."

*Id.* (citing *Jefferson Ins. Co. of New York v. Sea World of Florida, Inc*., 586 So. 2d 95, 97 (Fla. 5th DCA 1991) (Courts are not authorized "to put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity").

When an insurer seeks dismissal based on a policy exclusion, the insurer bears the burden of proof. *Cammarota,* 2017 WL 5956881, at *3.

## DISCUSSION

As an initial matter, this Court finds that in construing the United policy according to its plain language, Coverage A is not applicable to the harm alleged in the *Speciale* Complaint. Nowhere in the Complaint is there an allegation that Upton caused Speciale to suffer bodily injury or property damage. Rather, Speciale only alleges unspecified damages and harm to his "good reputation." This is not the sort of physical, tangible harm contemplated by Coverage A of the policy. Therefore, Upton is not entitled to insurance under Coverage A.

Moreover, to the extent the *Speciale* Complaint alleges that Upton breached his fiduciary duty to the unit owners by lying to them, stealing from them, and engaging in selective enforcement of Association rules, such claims also fail to allege any injury, damage or conduct covered by the United policy. Amica's argument that Upton's alleged breach of fiduciary duty could be considered an "accident," and that United must provide coverage because Speciale claims to have "suffered damages" as a result of the breach is unavailing. Without explanation or citation to legal authority, Amica contends that because Speciale seeks "compensatory damages," this is sufficient to constitute an allegation of "'bodily injury' damages." DE 11 at 8. Notably, counsel does not suggest what plausible bodily injuries could flow from Upton's alleged breach of his fiduciary duty. *See Great Am. Assur. Co. v. Elliott*, 846 F. Supp. 2d 1258, 1265, n.14 (M.D. Fla. 2012) (where there were "no allegations [of] physical harm . . . court

found "they did not suffer a 'bodily injury' and thus the Policy provides no coverage") (citing *Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1333, 1336 (M.D. Fla. 1998) (holding that the term "bodily injury," when used in an insurance policy, applies only to physical harm). This Court finds that even viewing the underlying Complaint in the light most favorable to Amica, the language of the United policy "unambiguously reveals" that the allegations unique to the breach of fiduciary duty claim are not covered. *Cammarota,* 2017 WL 5956881, at *2.

Indeed, only Speciale's allegations regarding Upton's purported publication of defamatory statements about him fall within the realm of the policy's Coverage B. For purposes of this motion, United does not dispute that Upton's position at Tierra Del Mar renders him an insured. It also appears that United does not dispute that Speciale's defamation claim falls within the scope of the policy's Coverage B for personal and advertising injury. United bases its request for dismissal on the Coverage B exclusions, namely that the insured knew his conduct would violate another's rights and cause injury, or that the insured published the material knowing it was false. Since United relies on a policy exclusion to deny coverage, it bears the burden of proof.

As a starting point, the Court considers the relevant language of United's policy. As noted above, Upton qualifies as an insured and the "personal and advertising injury" provision of Coverage B is applicable to Speciale's allegations that Upton defamed him. The issue is whether either of the first two exclusions under Coverage B bar coverage. As a threshold matter, the Court finds that the language of the exclusions is clear and unambiguous. The first exclusion bars coverage when it is alleged that the insured knew his statements would inflict "personal and advertising injury." The second exclusion bars coverage for "personal and advertising injury"

caused by a statement the insured knew was false.  The Court rejects Amica's claim that these exclusions are ambiguous and therefore unenforceable.

Next, the Court will consider the allegations in the underlying Complaint.  It is significant that Speciale states that "[t]he common denominator" upon which all his claims are based is Upton's "maliciously motivated bad faith acts and omissions."  DE 1-2 at p. 159, ¶ 12.  This language belies Amica's claim that "not all of the allegations were alleged to be maliciously motivated."  DE 11 at 3.  Indeed, Speciale's Complaint is rife with allegations of Upton's malicious intent and these claims are specifically "re-allege[d] and incorporate[d] by reference" into Speciale's defamation claim at Count Two.  DE 1-2 at p. 166, ¶ 25.  *See Orlando Nightclub Enterprises, Inc. v. James River Ins. Co.*, 2007 WL 4247875, at *4 (M.D. Fla. Nov. 30, 2007) (under Florida law, "when a cause of action alleged is one for intentional acts, the insurer has no duty to defend if the subject policy does not provide coverage for intentional misconduct") (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors*, 358 So.2d 533, 536 (Fla.1978) and *State Farm Fire and Cas. Co. v. Edgecumbe*, 471 So.2d 209, 210 (Fla. Dist. Ct. App. 1985)).

Amica alternatively argues that to the extent the *Speciale* Complaint alleges that Upton's defamatory statements were made intentionally, "there is no allegation that the defamatory statements were made with a specific intent to harm."  DE 11 at 4.  This argument ignores the Complaint's allegations that Upton had a "bad faith motive to harm Speciale" and that "Upton was and remains relentless in his endeavors to harm [Speciale's] reputation by publishing the false statements and continues to cause [Speciale] damage by republishing and repeating the false statements."  DE 1-2 at 162 at ¶ 18, 167 at ¶ 29.  Thus, the underlying Complaint alleges that Upton defamed Speciale with a specific intent to harm him and given the unambiguous language of Coverage B's exclusions, United properly denied him coverage.

Finally, Amica cannot overcome Coverage B's second exclusion which applies to defamatory statements the insured knew to be false. The *Speciale* Complaint is unequivocal in its claims that Upton knew that all his statements about Speciale were false. This exclusion provides a separate and independent basis for United to deny coverage.

The last issue for decision is whether to dismiss the Petition with prejudice or without prejudice. Amica is limited in its ability to amend its Petition in a way that will require United to provide coverage, given that Amica is constrained by the facts as alleged in the *Speciale* Complaint. Amica is unlikely to achieve a different result before this Court unless an amended complaint is filed in the underlying action containing allegations within United's policy coverage. *See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814–15 (Fla. Dist. Ct. App. 1985) ("where the original complaint fails to allege facts within the policy coverage, if it later becomes apparent from an amended pleading that claims not originally within the scope of the pleadings are being made which are within the insurance coverage, the insurance carrier, upon notification, would become obligated to defend") (citing *C.A. Fielland, Inc. v. Fidelity & Casualty Co. of New York*, 297 So.2d 122 (Fla. Dist. Ct. App. 1974)). Nevertheless, the Court cannot say that granting leave to amend the Petition would be futile; it is possible that an amended complaint will be filed before the time to amend the Petition expires. Therefore, the Court recommends dismissal without prejudice.

## REPORT AND RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant United's Motion to Dismiss Counts Two and Three from the Petition without prejudice. DE 6.

**NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 4th day of March, 2019, at West Palm Beach in the Southern District of Florida.

_____

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE